[No. 21591-1-III.   Division Three.   March 25, 2004.]

THE REVOCABLE LIVING TRUST OF HAROLD G. STRAND AND MARGARET M. STRAND, *Respondent*, v. WEL-CO GROUP, INC., ET AL., *Appellants*.

*Charles E. Watts* and *Candy K. Heaverlo*, for appellants.

*Duncan C. Wilson* (of *Sampson & Wilson, Inc., P.S.*), for respondent.

SWEENEY, J. — This is a dispute over a loan for the purchase of a luxury condominium in Kirkland, Washington. The loan was made to Douglas and Diana Brown by the Strand Trust, a private lender. It was guaranteed by Wel-Co Group, Inc. The central question presented is whether the

condominium purchase was for a commercial purpose and therefore exempt from Washington's usury law. The trial court ruled on summary judgment that it was. And the court also ruled that the Strand Trust did not diminish Wel-Co's security or subrogation rights. We affirm.

## FACTS

The facts here are undisputed. The Strand Revocable Living Trust (Strand) is owned by Harold G. and Margaret M. Strand. Douglas Brown was "a sophisticated and experienced real estate investor and developer." Clerk's Papers (CP) at 188. Strand knew of several other speculative commercial real estate ventures in which Douglas and Diana Brown (the Browns) had been involved in 1996, including at least one deal with Strand.

In June 1996, the Browns asked Strand for a loan to help finance the purchase of a luxury waterfront condominium in Kirkland, Washington. The Browns told Strand the seller wanted a quick sale and the property was a hot investment opportunity. The purchase price was $700,000. The Browns had already borrowed $450,000 from Seattle Funding Group, L.T.D., secured by a first deed of trust on the condo.

Strand agreed to provide additional financing of $240,000. Douglas Brown, individually and as trustee of the Brown Family Trust, and Diana Brown signed a promissory note for $340,000, which included a loan fee of $100,000. The interest rate was 24 percent, and the note was payable in 60 days, with a discount of $50,000 if paid in 60 days.

The note was secured by a second deed of trust on the condo, subject to restrictions imposed by the first lienholder. Only $100,000 could be secured by a second deed of trust. The Browns induced Wel-Co to provide additional security. Wel-Co executed a deed of trust in the amount of $340,000 on Wel-Co properties in Okanogan County, Washington. The Wel-Co deed of trust secured the entire loan amount.

On the same day as these transactions, the Browns and Strand executed a written loan agreement. In prominent 12-point type, they conditioned the loan on these representations:

1. Borrower hereby represents and warrants to Lender as follows:

   (a) That the proceeds of the loan hereinafter described will be used exclusively for commercial and business purposes and further warrants that none of the proceeds of this loan shall be used for any personal purposes or for any consumer transaction as such is defined in RCW 19.52.080;

   (b) That this transaction has been negotiated . . . ;

   . . . .

   (d) Borrower represents and warrants that they have personal knowledge of the truth and accuracy of the representations and warranties which have been made herein;

   (e) That Lender may rely upon the representations and warranties which have been made herein without the necessity of independently verifying the same, and that Lender has and will rely upon them.

CP at 11.

Over the next four years, the Browns repaid only $290,000. In 2001, Strand declared the Browns in default and started foreclosure proceedings on the condo for the $100,000 secured by the second deed of trust. To avoid foreclosure, the Browns paid Strand $100,000 plus interest. Strand then instructed the trustee to reconvey the deed.

## PROCEDURE

Strand sued the Browns for $243,721.39 principal, $220,671.48 interest, continuing interest at $160.26 per day, and attorney fees and costs. Strand also sued to foreclose on the Wel-Co deed of trust. Everyone moved for summary judgment.

The Browns offered no evidence of contemporaneous oral representations which in any way conflicted with their written statement that the loan was exclusively for commercial and business purposes. The Browns argued instead that Strand knew the purpose of the loan was "to allow Doug and Diana Brown to acquire a residential condominium in Kirkland and that the money provided was a second mortgage to allow them to fund that purchase." CP at 213. And "Mr. Strand at all times knew that the loan was for purchase of this condominium, and knew that any recital in the Note or Deed of Trust to the contrary was a fabrication." CP at 133. But this point was not disputed.

The trial judge noted that "no recital to the contrary" appears either in the note or in the deed of trust. CP at 201. Both clearly state that the purpose of the loan is the purchase of a residential condominium. CP at 201. Strand did not deny knowing that the Browns intended to live in the condo. The court concluded that this was not a material fact, because commercial transactions involving residential properties are not unusual. The undisputed facts were that the Browns were sophisticated and experienced in commercial real estate, had a history of commercial borrowing with Strand, and had made both written and oral representations to Strand that the purpose of the loan was a commercial investment. The court ruled, therefore, that the commercial loan exception to the usury law applied and entered summary judgment in favor of Strand.

As to the $100,000 paid by the Browns to avoid foreclosure on the condo second deed of trust securing that amount, Wel-Co argued that suretyship law required Strand to apply the $100,000 to that part of the obligation secured by Wel-Co. By not doing so and releasing the Brown deed of trust, Wel-Co contended Strand unlawfully impaired Wel-Co's suretyship status. The court concluded that Strand did not violate Wel-Co's rights. Both the statute and the terms of the deed *required* Strand to apply the Browns' $100,000 plus interest as instructed by the Browns and to reconvey the Brown deed of trust once they paid off the amount secured by the deed.

## DISCUSSION

COMMERCIAL NATURE OF THE LOAN

The Browns and Wel-Co contend that they presented enough evidence in the trial court to at least raise a question of fact as to the purpose of this loan and that, therefore, summary judgment was not appropriate.

■ We review the trial judge's interpretation of the usury act de novo. *Jansen v. Nu-W., Inc.*, 102 Wn. App. 432, 439, 6 P.3d 98 (2000). And we review summary dismissal de novo. *Mountain Park Homeowners Ass'n v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994). The moving party must demonstrate the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. To avoid judgment, the nonmoving party must identify specific evidence establishing a genuine dispute over a material fact. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225-26, 770 P.2d 182 (1989).

*Issue*

The Browns characterize the question before this court as factual—whether the loan proceeds were used for a business purpose or a personal purpose. But the trial judge's characterization of the issues is closer to the mark: whether the Browns produced any evidence of conflicting oral representations made at the time of the loan so as to call into question the reliability of their unequivocal written representations that the loan was strictly for commercial purposes.

*Washington's Usury Law*

■ ■ Chapter 19.52 RCW limits permissible interest rates on consumer loans. A transaction bearing interest above the statutory limit is prima facie usurious and unenforceable. RCW 19.52.030. But usury laws protect consumer transactions. A consumer transaction is one that is "primarily for personal, family, or household purposes." RCW 19.52.080. The purpose of the statute is to protect

citizens from financial oppression by preventing individuals from incurring debts at high interest rates on consumer loans. RCW 19.52.005; *Stevens v. Sec. Pac. Mortgage Corp.*, 53 Wn. App. 507, 515, 768 P.2d 1007 (1989).

■ The act exempts commercial loans—"primarily for agricultural, commercial, investment, or business purposes." RCW 19.52.080. And the act is specifically not concerned with loans obtained to purchase luxury homes that borrowers could not otherwise finance. *Stevens*, 53 Wn. App. at 517.

■ ■ This loan was usurious on its face. It was then Strand's burden to show the loan's business purpose. RCW 19.52.080; *Stevens*, 53 Wn. App. at 514. The purpose of a loan is established by proof of the borrower's objective manifestations of purpose to the lender *at the time the loan is made*. *Brown v. Giger*, 111 Wn.2d 76, 82, 757 P.2d 523 (1988). An uncontradicted contemporaneous written loan agreement containing an unequivocal statement of purpose is conclusive evidence and satisfies the lender's initial burden. *Id.*; *Castronuevo v. Gen. Acceptance Corp.*, 79 Wn. App. 747, 751-52, 905 P.2d 387 (1995). And so Strand satisfied its initial burden.

The burden then shifted to the Browns to contradict the writing with evidence of oral representations at the time of the transaction that would permit a reasonable jury to find that Strand knew the loan was for a consumer purpose. *Jansen*, 102 Wn. App. at 440. And it is immaterial that the borrower later uses the loan proceeds for a different purpose. The issue is whether or not the lender was told the loan was for a business purpose. Usury exists at the inception of the transaction or not at all. *Thweatt v. Hommel*, 67 Wn. App. 135, 143, 834 P.2d 1058 (1992).

Here, Strand produced a clear and legible written agreement for a commercial loan. Strand also attested from personal knowledge and experience that Mr. Brown was a sophisticated real estate speculator and commercial borrower. Neither the Browns nor Wel-Co offered any evidence to dispute these facts. They alleged no oral representation

that conflicted with the written agreement or that might arguably have alerted Strand that this loan differed from previous commercial loans to the Browns.

■ The Browns simply repeat that Strand knew the money would finance the purchase of a residential condominium. From this they invite comparison with the family home buyer who at closing expresses the belief that the property will prove to be a good investment. But the Browns offer no authority for their essential assumption that, by definition, no loan for the purchase of residential property can be for a business or investment purpose. We do not assume that.

The court then correctly rejected the usury defense as a matter of law.

SURETYSHIP

Next Wel-Co argues that Strand improperly reconveyed the second deed of trust on this condo to the Browns. And that by doing so, Strand impaired Wel-Co's right of subrogation to Strand's recourse against the Browns. Again, the appeal is from a conclusion of law. And so our review is de novo. *Kruse v. Hemp*, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993).

*Common Law Suretyship*

■ Suretyship arises when one assumes an obligation to pay the debt of another. The noteholder (here, Strand) is still entitled to only one performance. *Honey v. Davis*, 131 Wn.2d 212, 217-18, 930 P.2d 908, 937 P.2d 1052 (1997); RESTATEMENT (THIRD) OF THE LAW OF SURETYSHIP AND GUARANTY § 1(1)(a)-(c) (1996) (hereafter RESTATEMENT THIRD). Surety status arises as a matter of law. RESTATEMENT THIRD § 1(2), (3). Here, Strand has recourse against Wel-Co's property if the Browns default on the promissory note. Wel-Co has suretyship status, then, as a matter of law. *Honey*, 131 Wn.2d at 218; RESTATEMENT THIRD § 1(3)(a).

Suretyship creates a number of defenses. RESTATEMENT THIRD § 19 & cmt. e. The surety is discharged to the extent

the borrower satisfies the underlying obligation. This is because the creditor has the right to only one performance. RESTATEMENT THIRD § 19(a) & cmt. a.

Wel-Co contends a material factual dispute remains over the degree to which Wel-Co benefited, or should have benefited, by the Browns' performance. By the terms of the Wel-Co deed of trust, however, Wel-Co is secondarily liable for the entire amount of principal and interest.

Both parties cite *Warren v. Washington Trust Bank*.[1] *Warren* is not on point. In *Warren*, the debt on which the surety was liable was one of a number of loans between the creditor bank and the principal debtor. *Warren*, 92 Wn.2d at 384. In such cases, a surety may have an equitable right to direct the application of payments to the obligation for which the surety is liable. *Id*. at 386 (citing ARTHUR ADELBERT STEARNS, THE LAW OF SURETYSHIP § 7.23, at 241-42 (5th ed. James L. Elder 1951)). In *Warren*, the bank applied payments to obligations other than the one upon which the surety was liable. It did so at the direction of the debtor. *Warren*, 92 Wn.2d at 389.

Here, there is only a single loan evidenced by a single promissory note. And Wel-Co undertook a suretyship obligation for the entire amount of the loan plus interest. Wel-Co's obligation is then coextensive with the principal obligation. And therefore, any payments could be applied only to Wel-Co's obligation. There is no other.

*Release of Collateral*

The general rule is that a surety is discharged from liability to the extent of the value of any security the creditor relinquishes. *Warren*, 92 Wn.2d at 390. But the surety is not discharged unless the release of the security impairs its suretyship status. *Id*. Here, Strand had a deed of trust on the Browns' condo. Strand did not "release" the collateral. Rather, it realized upon it. Strand induced the Browns to perform to the tune of $100,000 by proceeding

---

[1] *Warren v. Wash. Trust Bank*, 92 Wn.2d 381, 598 P.2d 701 (1979).

against the deed of trust securing that amount. And, of course, the Browns' performance discharged Wel-Co's obligation to the same extent—$100,000.

## Subrogation

Wel-Co next complains that its rights of subrogation against Strand have been impaired.

██ ██ When a creditor intends to look to a surety for payment, he must preserve unimpaired all his rights against the debtor. *Nat'l Bank of Wash. v. Equity Investors*, 86 Wn.2d 545, 556, 546 P.2d 440 (1976). If the creditor, without the surety's consent, impairs the surety's subrogation right to enforce the creditor's security interest, the surety is discharged. *Id.* The right of subrogation attaches, however, only *after* the surety has satisfied the underlying debt. RESTATEMENT THIRD § 27(1).

Wel-Co had no subrogation rights here. First, Wel-Co did not pay Strand anything. Second, once the Browns satisfied the underlying obligation, Strand had no further recourse against them to which Wel-Co could be subrogated. And, most importantly, Washington's deed of trust statute, chapter 61.24 RCW, required Strand to convey the deed upon receipt of the Browns' $100,000.

Here, had the trustee not reconveyed the condo deed to the Browns upon satisfaction of the obligation secured and a written request by Strand, the Browns could have demanded reconveyance. RCW 61.24.110.

In sum, Strand did not impair Wel-Co's suretyship status by reconveying the condo deed of trust to the Browns. Wel-Co's obligation to the extent of $100,000 was discharged by the Browns' performance. Wel-Co, therefore, had no subrogation interest in the deed of trust.

There is, then, no issue of material fact as to the allocation of the $100,000 payment. Wel-Co's suretyship status was not impaired by Strand's reconveyance of the condo deed of trust to the Browns.

ATTORNEY FEES

The enforcement provisions of the promissory note provide for attorney fees. Strand is entitled to its attorney fees from the Browns. RCW 4.84.330; RAP 18.1(b).

We affirm the summary judgment of the trial judge.

BROWN, C.J., and KURTZ, J., concur.