
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Guardianship of | ) | |
| | ) | No. 39137-0-III |
| OSTEN DANIEL ZERR | ) | |
| | ) | |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |

STAAB, J. — Osten Zerr is an adult subject to a guardianship. His co-guardians are his biological father, Vincent Zerr, and Vincent's wife, Julie Zerr. Kava Zerr,[1] Osten's biological mother, has supervised visitation rights and is allowed one video visit per week with Osten and one in-person supervised visit per month.

Shortly after Vincent and Julie were appointed as Osten's guardians, Kava filed various complaints about the guardians and about the appointed professional visit supervisor, Peggy Mosshart. In response to Kava's complaints, the court appointed a court visitor to investigate the allegations. The court visitor filed a report, a hearing was held, and the court ultimately decided that no changes needed to be made to the guardianship order or the order on visits.

Kava appeals and we affirm.

---

[1] The parties are referred to by their first names throughout this opinion for clarity. No disrespect is intended.

BACKGROUND

Osten's parents separated when he was a child and his mother, Kava, was named his primary parent. Nevertheless, the parents continued to disagree about Osten's care and custody. When Osten turned 18, the court appointed his father, Vincent, and his step-mother, Julie, as Osten's co-guardians. Since then, Kava has been fighting to regain full custody or control of Osten.

In December 2021, an order on visitation was entered outlining the procedure through which Kava could have contact with Osten. According to the order, Kava was permitted one video visit per week with Osten and two in-person, supervised visits per month. Mosshart was appointed as the in-person visit supervisor. According to the order, Mosshart could require Kava to submit to a 12-panel hair follicle test to show that she was not using illegal substances.[2]

In February and May 2022, Kava filed complaints alleging that the guardians and visit supervisor were interfering with her access to Osten as well as his medical information. Kava also challenged the visit supervisor's request that Kava provide a 12-panel hair follicle test. In response to Kava's complaints, the court appointed a court visitor.

---

[2] There is evidence in the record that Kava was previously incarcerated for methamphetamine possession.

The court visitor filed her report on May 24, 2022. The court visitor stated that she was able to speak with Osten's pediatrician and that he stated he had "no concerns with Mr. Vincent Zerr and Ms. Julie Zerr and their care of [Osten]." Clerk's Papers at 197. The court visitor also spoke with records employees who work for one of Osten's medical providers. Those employees clarified that, according to the guardianship paperwork, Kava does not have access to medical records since she is not a guardian. Finally, the court visitor spoke to the visitor supervisor, Mosshart, who stated that Kava and Osten's in-person supervised visits had been occurring at her office and that one visit had recently been cancelled and made up due to a medical issue with Osten.

In July 2022, the court held a hearing to address Kava's complaints. At the hearing, the court addressed each of Kava's complaints in turn. In its ruling, the court made several minor changes to the guardianship order. For instance, the court clarified that Vincent and Julie needed to provide Kava with medical notes and reports along with information about Osten's medical appointments. The court also set some parameters for Kava's video visits with Osten. Finally, the court addressed Kava's complaint that the professional supervisor, Mosshart, had required her to get a 12-panel hair follicle test. The court found that the request was within the discretion of Mosshart pursuant to the order on visits. Other than these minor changes, however, the court made no major adjustments to the guardianship order.

Kava filed a notice of appeal of the court's order.

ANALYSIS

The issue raised in Kava Zerr's pro se brief is difficult to discern. Kava's only assignment of error is to the trial court's refusal to remove the "GAL" from this matter. Appellant's Br. at 1. "GAL" is a common acronym for guardian ad litem. Under the newly enacted Uniform Guardianship, Conservatorship, and Other Protective Arrangements Act, ch. 11.130 RCW, guardians ad litem are appointed by the court to represent the best interests of minors, whereas court visitors are persons appointed by the court for other specific but limited purposes. *See* RCW 11.130.010(7) and (12). "Guardians" on the other hand, are different from guardians ad litem, and include persons appointed by the court on a more permanent basis to make decisions with respect to the affairs of an incapacitated person. RCW 11.130.010(11).

In this case, the court appointed a "guardian ad litem/court visitor" to investigate the claims made by Kava Zerr against the guardians and the visit supervisor for her adult son. While Kava claims to be challenging the court's failure to remove "the GAL," her briefing suggests that she may be challenging the court's failure to remove the guardians. We give Kava the benefit of the doubt and consider her appeal as challenging the guardians and the court visitor.

We review the trial court's management of the guardianship for abuse of discretion. *Ursich v. Ursich*, 10 Wn. App. 2d 263, 271, 448 P.3d 112 (2019) (citing *In re Guardianship of Cornelius*, 181 Wn. App. 513, 528, 326 P.3d 718 (2014)). "A trial court

abuses its discretion only when no reasonable person would take the view adopted by the trial court." *Id*.

1.     REFUSAL TO REMOVE OSTEN ZERR'S GUARDIANS.

Kava contends that the court erred when it refused to remove Osten's "GAL." Assuming she is referring to Osten's co-guardians, Vincent and Julie, we disagree.

Initially, we note that Osten is an adult and the guardianship proceedings are controlled by ch. 11.130 RCW.  Kava's citations to the Juvenile Court Act in Cases Relating to Dependency of a Child and the Termination of a Parent and Child Relationship, ch. 13.34 RCW, and Dissolution Proceedings, ch. 26.09 RCW are inapplicable.

The superior court has the authority to appoint guardians for the persons and/or estates of incapacitated persons.  RCW 11.130.265.  An individual who is interested in the welfare of the individual subject to a guardianship may file a grievance or complaint against the guardian.  RCW 11.130.140(1).  Within fourteen days of the complaint being filed, the court must act according to RCW 11.130.140(2)(c)(i)-(vi).  One action a court may take is appointing a court visitor or other representative to investigate the issues raised in the complaint.  RCW 11.130.140(2)(c)(ii).

Kava filed complaints about Osten's guardians in February and May 2022.  The court, pursuant to RCW 11.130.140, appointed a court visitor to investigate the complaints both times.  In May 2022, the court visitor filed her report.  The report filed

5

by the court visitor found no issues with the care the co-guardians were rendering to

Osten, clarified why Kava did not have access to medical records, and found no issues

with how Kava's supervised visits had been conducted.

At the hearing, the court addressed Kava's access to medical information,

allegations that Osten's health was declining, and allegations that the guardians and the

visit supervisor were interfering with Kava's visits with Osten. After discussing Kava's

complaints and considering the court visitor's report, the court ruled that the complaints

should not "result in any changes in the guardianship order." Rep. of Proc. at 36.

The court did not abuse its discretion when it declined to remove Osten's

guardians or otherwise change the guardianship order or order on visits following Kava's

complaints. Kava has failed to demonstrate either a factual or legal reason for removing

the guardians. The court visitor's report and the argument at the hearing on Kava's

complaints showed that there was no reason to change either order. Further, the court

took pains to address all of Kava's complaints, clarify the earlier guardianship order and

order on visits, and come up with amicable resolutions to some of Kava's complaints

regarding her visits with Osten.

2.      REFUSAL TO REMOVE THE COURT VISITOR

Assuming Kava is challenging the superior court's failure to remove the court

visitor, we review this claim and find no abuse of discretion.

The superior court appointed a court visitor under RCW 11.130.140(2)(c)(ii) to investigate the allegations made by Kava against Osten's guardians. At the hearing below, Kava did not challenge the appointment of the court visitor, seek to have the court visitor removed or replaced, and failed to demonstrate any abuse of discretion in considering the court visitor's report.

In her appeal, Kava argues that the GAL "did not prepare a proper report," and then suggests that she is challenging the original petition for Adult Guardianship. Appellant's Reply Br. at 4. Kava does not explain how the court visitor's report was factually or legally inadequate. At the outset, the court noted that it had reviewed the court visitor's report in preparation for the hearing. Kava did not object to the court's consideration of the report or argue that it was inadequate. Without a proper objection, Kava failed to preserve any challenges to the court visitor or her report. *See* RAP 2.5(a). To the extent that Kava is challenging the initial superior court order establishing Osten's guardianship, this order is not before this court for review.

3.    ATTORNEY FEES

Vincent and Julie Zerr request attorney fees on appeal or sanctions against Kava for filing a frivolous appeal. We decline to award attorney fees.

In their briefing, Vincent and Julie Zerr make a passing request for attorney fees. RAP 18.1 allows for a party to recover attorney fees on appeal in some cases. However, RAP 18.1(b) requires more than just a bald request for attorney fees. *Thweatt v.*

*Hommel*, 67 Wn. App. 135, 148, 834 P.2d 1058, *review denied*, 120 Wn.2d 1016, 844 P.2d 436 (1992). "A request for appellate attorney fees requires a party to include a separate section in her or his brief devoted to the request." *Stiles v. Kearney*, 168 Wn. App. 250, 267, 277 P.3d 9 (2012); RAP 18.1(b). Because Vincent and Julie did not dedicate a section in their brief to the attorney fees issue, they may not recover fees under RAP 18.1.

Vincent and Julie also make a request that Kava be sanctioned for filing a frivolous appeal. We conclude that the appeal is not frivolous and decline to award fees under this rule.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Fearing, C.J.

_____
Siddoway, J.