[No. 22835-5-III.   Division Three.   May 24, 2005.]

TRI-CITY CONSTRUCTION COUNCIL, INC., *Appellant*, v. CHRIS WESTFALL ET AL., *Defendants*, COLONIAL AMERICAN CASUALTY & SURETY, *Respondent*.

---

[38] Whether other aspects of chapter 7.70 RCW are preempted by DOHSA are issues not before us.

670

*Terry E. Miller*, for appellant.

*Alexander A. Friedrich* (of *Yusen & Friedrich*), for respondent.

¶1 Sweeney, A.C.J. — Chris Westfall is a drywall contractor doing business as Chris Westfall Drywall. He participated in something called a "retrospective rating plan," which allowed employers to join together as a group to lower their industrial insurance claims and, if successful, to receive a retrospective premium refund. Former WAC 296-17-90403 (2000). He was a member of a group sponsored by the Tri-City Construction Council, Inc. (Council). If, however, the members were not successful and owed an additional assessment, the Council would make one payment to the Department of Labor and Industries (Department) and then collect from its members. Here, the Council paid the Department a collective additional assessment. Westfall then went bankrupt and did not pay the Council its share of this assessment. The question here is whether the Council may now collect Westfall's share of the assessment from Westfall's bonding company, Colonial American Casualty and Surety. And we hold that the Council can equitably subrogate to the position of the Department and collect from Colonial.

## FACTS

¶2 Chris Westfall Drywall posted its statutorily required contractor's bond with the state. Colonial American Casualty and Surety provided that bond.

¶3 Tri-City Construction Council is a sponsor of two Washington Department of Labor and Industries' retrospective rating programs. Westfall was a member of the Council.

*Washington's Retrospective Rating Plan*

¶4 In order to understand this case and the facts of this case, it is necessary to have an understanding of Washington's retrospective rating plan.

¶5 The retrospective rating plan is designed to help employers lower industrial insurance premiums. RCW 51-.18.005; WAC 296-17-90401. Employers who wish to join the plan may enroll in either an individual plan or a group plan. Former WAC 296-17-90403. Group plans are managed by organizational sponsors. Former WAC 296-17--90403. An organization must meet numerous requirements to qualify as a sponsoring organization. RCW 51-.18.020; WAC 296-17-90409. Both sponsors and employers must have an industrial insurance account in good standing with the Department. Former WAC 296-17-90406(1) (2000); former WAC 296-17-90409(4) (2000).

¶6 The groups include employers in the same industry or business. RCW 51.18.020(7), .040(1); former WAC 296-17--90421(1) (2000). The object is to provide each group with the lowest possible premium based on the degree of risk in their specific industry or business. RCW 51.16.035; WAC 296-17-90402, -90421. Toward that end, each group's performance is evaluated at the end of its coverage period to determine whether it retrospectively qualified for a lower premium or a higher premium. RCW 51.16.035; WAC 296-17-90402; former WAC 296-17-90463 (2000).

¶7 Members receive a premium refund for the previous year only through their sponsor, here the Council. Former WAC 296-17-90463(2). The refund is disbursed by the plan's sponsoring organization. Former WAC 296-17-90463(2); former WAC 296-17-90466(1) (2000). The Department does

not dictate how the refund is disbursed by sponsoring organizations. Former WAC 296-17-90463(2); former WAC 296-17-90466(1).

¶8 The Council may be assessed an additional retrospective premium if the members were not able to reduce their workers' compensation costs. Former WAC 296-17-90463(1); former WAC 296-17-90469 (2000). And the Department "hold[s] the [sponsoring] organization responsible for any additional assessment." Former WAC 296-17-90469. "The sponsoring organization *must* have an industrial insurance account and the account must be in good standing at all times . . . ." Former WAC 296-17-90409(4) (emphasis added). Additional assessments must be paid within 30 days. Former WAC 296-17-90472 (2000).

¶9 To maintain the account in good standing, the "group must have . . . paid all industrial insurance premium payments, *assessments, penalties* and interest when due and on time." Former WAC 296-17-90402 (2000) (emphasis added). The term "account" means the "sponsoring organization's industrial insurance account." WAC 296-17-90402.

*Tri-City Construction Council*

¶10 As a member of the Council, Westfall agreed to pay a percentage of any additional assessments or penalties imposed on the group. The Department made both an additional assessment and a penalty assessment on the Council for the 2000/2001 year. The Council paid the assessment to the Department, including Westfall's portion. Westfall's share of the assessment was $12,476. Westfall failed to pay the Council. The Council then sued Westfall and its bonding company, Colonial, to recover the amount of the assessment. Westfall filed for bankruptcy. The Council then claimed against the bond. The Council moved for summary judgment. The trial court concluded that the Council was not covered by the bond and entered summary judgment in favor of Colonial and dismissed the suit.

## DISCUSSION

¶11 The Council makes two arguments here on appeal. First, it argues it is covered by the bond language. And second, even if it is not covered by the bond, it is entitled to equitable subrogation because it paid what amounted to Colonial's obligation to the Department.

¶12 Colonial disagrees on both counts. It responds that the statute (RCW 18.27.040) obligates it to the Department, and only the Department. And equitable subrogation does not apply because the Department never sustained a loss. Without a loss there is no right to subrogate. It argues, moreover, that subrogation is an equitable doctrine designed to impose responsibility on the party responsible for the loss; the party that is primarily liable. And Colonial did not cause this loss.

*Standard of Review*

¶13 We review the trial court's grant of summary judgment de novo. *Ellis v. City of Seattle*, 142 Wn.2d 450, 458, 13 P.3d 1065 (2000). Summary judgment is appropriate where there are no genuine issues of material fact and the issues presented can be resolved as a matter of law. *Id.*

*Equitable Subrogation*

¶14 We address, first, the question of equitable subrogation since we find that dispositive here.

■ ■ ¶15 Principles of natural justice give rise to the doctrine of equitable subrogation. *Tilly v. John Doe*, 49 Wn. App. 727, 734, 746 P.2d 323 (1987). This means that we will require the party who should pay a debt to ultimately pay it. *Mahler v. Szucs*, 135 Wn.2d 398, 411, 957 P.2d 632, 966 P.2d 305 (1998); *In re Liquidation of Farmers & Merchs. State Bank of Nooksack*, 175 Wash. 78, 85, 26 P.2d 631 (1933). But there is no absolute right of equitable subrogation. *Farmers & Merchs. State Bank*, 175 Wash. at 86. It is, instead, based upon the circumstances of each case and the demands of justice for an equitable result. *Id.*

at 85-86; *Tilly*, 49 Wn. App. at 734. And we will apply the doctrine liberally "in the interests of justice and equity." *J.D. O'Malley & Co. v. Lewis*, 176 Wash. 194, 201, 28 P.2d 283 (1934). " '[T]he doctrine as now applied is broad enough to include every instance in which one person, not acting voluntarily, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter.' " *Farmers & Merchs. State Bank*, 175 Wash. at 85-86 (quoting 25 Ruling Case Law § 18, at 1322-23 (William M. McKinney & Burdett A. Rich eds. (1919))).

■ ¶16 Although there is no defined rule, the right to equitable subrogation has been generally recognized in four categories:

> "[1] [T]hose who pay the debt to another in the performance of a legal duty imposed by contract or the rules of law. [2] [T]hose who pay the obligation of another for the purpose of protecting their own rights or interests. [3] [T]hose who pay the debt of another under an agreement for subrogation to the right of the creditor. [4] [T]hose who pay on the invitation of the public and whose payment is favored by public policy."

*Id.* at 86 (quoting 25 Ruling Case Law § 10, at 1323-24).

■ ¶17 Contractors must post a bond when they register with the state. RCW 18.27.040(1). The bond benefits the state: "The bond shall be conditioned that the applicant will pay all persons performing labor, *including employee benefits*, for the contractor, [and] will *pay all taxes and contributions due to the state of Washington*." RCW 18.27.040(1) (emphasis added). So, but for the retrospective plan, if Westfall had failed to pay the Department, the Department would have been able to collect from the bond. RCW 18.27.040(1).

¶18 Retrospective rating plans, like the one represented by the Council here, are administered according to rules adopted by the Department. RCW 51.18.010(1), (2). Under the plan, Westfall was obligated to pay the Council. And the Council was obligated to pay the Department. That statutory scheme does not release Colonial of an obligation it

bargained for—to ultimately pay Department assessments if Westfall did not.

¶19 The Council had a legal duty to pay the Department in full for the additional assessment:

> [W]e are not concerned with how an additional assessment is to be distributed to members of a group. We hold the organization responsible for any additional assessment.

Former WAC 296-17-90469.

¶20 And the Council is required to maintain an industrial insurance account in good standing. Former WAC 296-17-90409(4). And to do that, it had to pay any additional assessments. Former WAC 296-17-90402; former WAC 296-17-90409(4); former WAC 296-17-90469.

■ ¶21 The Council had, then, a legal obligation to make the payment and the payment was made to protect its own interests. It was, then, entitled to equitable subrogation against Colonial. *Farmers & Merchs. State Bank*, 175 Wash. at 86.

¶22 We need not address the Council's first argument that it was a beneficiary under the terms of the bond. We reverse the decision of the trial court and remand for entry of an order requiring Colonial to reimburse the Council for payments made on behalf of Westfall to the Department.

SCHULTHEIS and KURTZ, JJ., concur.