## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

COLUMBIA ASSET RECOVERY
GROUP, LLC, a Washington
limited liability corporation,

Appellant,

v.

JOSEPH R. KELLY, as the Successor
Personal Representative of THE
ESTATE OF WILLIAM D. PHILLIPS,
SR., deceased,

Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

DIVISION ONE

No. 69365-4-I

PUBLISHED OPINION

FILED: November 4, 2013

DWYER, J. — Columbia Asset Recovery Group, LLC (CARG) appeals from

the trial court's order dismissing its complaint for lack of personal jurisdiction.

Timothy Kennedy, CARG's sole member, was the guarantor of a one million

dollar Business Loan Agreement and Promissory Note executed by William

Phillips and Atlantic Frost Holdings, LLC (AFH). The Agreement contains

jurisdiction and venue provisions permitting the lender, Columbia State Bank, to

bring a collection action in King County. After Phillips died, neither his estate nor

AFH paid the balance of the Note. Accordingly, the lender demanded payment

from Kennedy. In response, Kennedy formed CARG and caused CARG to

purchase the lender's rights under the Agreement and Note, which the lender assigned to CARG. CARG then filed suit in King County against the Estate of Phillips (the Estate). However, the trial court dismissed CARG's complaint for lack of personal jurisdiction. Because there is a genuine issue of material fact as to whether CARG and the lender intended CARG's payment to constitute a discharge of the Estate's payment obligation, the trial court erred by granting the Estate's motion to dismiss. We reverse and remand for further proceedings consistent with this opinion.

I

In June 2009, Phillips and AFH executed a Commercial Line of Credit Agreement and Promissory Note (Note) in the principal amount of $1,000,000, payable to Columbia State Bank (the Bank), and a Business Loan Agreement (Agreement). Phillips and AFH were the primary obligors. However, Timothy Kennedy personally guaranteed payment of the Note in the event that Phillips and AFH failed to pay. The Note contains a provision providing for payment to be made in Seattle. The Agreement includes a jurisdiction provision providing that Phillips and AFH "agree to waive any objection to jurisdiction or venue on the ground that [they] are not residents of [the Bank's] locality"—which was Seattle.

Phillips died in an airplane crash in 2010. Subsequently, the personal representative of the Estate negotiated two extensions of the Note. The Estate paid interest on the AFH loan through February 2011 but, by March 17, 2011, the Estate informed the Bank that it could no longer pay the interest on the AFH loan

- 2 -

pursuant to Maryland probate law.[1] When the Agreement and Note became due in April 2011, neither AFH nor the Estate paid.

Meanwhile, on October 22, 2010, the Bank demanded that Kennedy make good on his guaranty.[2] On April 13, 2011, Kennedy spoke with a representative of the Bank regarding "options for enforcement of [the AFH Loan]." Kennedy subsequently formed CARG, a Washington limited liability company. Kennedy's counsel later told the Estate's counsel that "Mr. Kennedy formed [CARG] to facilitate his satisfying the guaranty."

Kennedy filed a counterclaim for indemnity against the Estate in the Delaware Court of Chancery on July 25, 2011. In his counterclaim, Kennedy claimed that Phillips "is the primary obligor on the debt owed to Columbia Bank. Kennedy, as guarantor, is entitled to be indemnified for any amounts he is required to pay to Columbia Bank."

On August 4, 2011, the Bank and CARG entered into the Loan Purchase and Assignment Agreement (LPA Agreement). In the LPA Agreement, the Bank and CARG agreed to several provisions that the parties highlight in disputing whether the Bank and CARG intended the LPA Agreement to operate as an assignment rather than a discharge:

- "The Bank has made demand on Kennedy for payment of the amounts

---

[1] Maryland law bars an apparently insolvent estate from making a preferential payment to one claimant over another, and the Estate informed the Bank that continuing to pay interest on the loan would be viewed as preferential. See MD. CODE ANN. § 8-105(b).

[2] The parties refer to Kennedy's obligation as both a "guarantee" and a "guaranty." For purposes of this opinion, the difference in spelling does not affect the nature of Kennedy's obligation.

owing under the Loan pursuant to the Commercial Loan Guaranty. Kennedy has instead proposed to purchase the Loan through a new entity he has established for that purpose, [CARG]."

- "The purchase price will be funded by a loan from Bank to Kennedy, the proceeds of which Kennedy will loan to [CARG]."

- "Subject to the terms and conditions of this Agreement, the Bank also hereby agrees to assign to [CARG] all of the Bank's interests, rights and obligations under the Cooperation Agreement . . . ."

CARG then paid the Bank $1,026,071.94.

On February 3, 2012, Kennedy's counsel stated in a letter to the Estate's counsel that Kennedy had been "forced to honor his personal guarantee" of the obligation owed by Phillips and AFH. One week later, the Estate's counsel asked Kennedy's counsel to confirm that the LPA Agreement "satisfied Mr. Timothy Kennedy's personal guarantee." Kennedy's counsel provided a letter from the Bank to Kennedy stating that "[f]rom the bank's perspective, your purchase of the loan for full face value certainly satisfied all of your obligations to the Bank under your personal guaranty, and we therefore view you to have honored your guaranty in full." Additionally, Kennedy's counsel—during a hearing before the Delaware Court of Chancery—stated that "Mr. Kennedy used [CARG] as the vehicle to satisfy his personal guarantee." Finally, Kennedy submitted a declaration to the United States District Court for the Western District of Washington that stated, "Since the filing of the Complaint, I have been required

to make good on my guarantee of that debt by Columbia State Bank."

On March 15, 2012, CARG brought suit to enforce the Agreement and Note against the Estate in King County Superior Court. On June 8, 2012, the Estate, pursuant to CR 12(b)(2), moved to dismiss the complaint for lack of personal jurisdiction. In its motion, the Estate argued that Kennedy and CARG were alter egos and that Kennedy had fulfilled his obligation as guarantor by virtue of the Bank's assignment to CARG, which had thereby discharged the Agreement and Note. It followed from this, the Estate contended, that the King County jurisdiction and venue provisions were also discharged and could no longer provide a contractual basis for exercising personal jurisdiction over the Estate in Washington.

CARG opposed the Estate's motion to dismiss, contending that assignment of the Note and Agreement did not constitute a discharge, especially where the parties did not intend such a discharge to occur. CARG further asserted that, if it was an alter ego of Kennedy, it would be subrogated to the Bank's rights under the Agreement and Note. CARG also moved for summary judgment in a separate motion. However, instead of ruling on CARG's motion for summary judgment, the trial court granted the Estate's motion to dismiss for lack of personal jurisdiction and dismissed CARG's complaint with prejudice. In granting the Estate's motion to dismiss, the trial court made no findings of fact.

CARG subsequently filed a motion for reconsideration. Although the trial court granted CARG's motion, it did so only insofar as it dismissed CARG's complaint without prejudice, thereby allowing CARG to refile its complaint

elsewhere. CARG appeals both the order granting the Estate's motion to dismiss and the order granting CARG's motion for reconsideration to the extent that the second order did not vacate the first order's dismissal of the complaint.

II

The Estate first contends that CARG's appeal is moot. This is so, the Estate asserts, because CARG is currently litigating an identical claim in the United States District Court for the District of Maryland. We disagree. "A case is moot if a court can no longer provide effective relief." State v. Gentry, 125 Wn.2d 570, 616, 888 P.2d 1105 (1995). We avoid considering moot cases in order "to avoid the danger of an erroneous decision caused by the failure of parties, who no longer have an existing interest in the outcome of a case, to zealously advocate their position." Orwick v. City of Seattle, 103 Wn.2d 249, 253, 692 P.2d 793 (1984). Here, notwithstanding CARG's pending action in federal district court, effective relief can still be granted. The Estate points to no final judgment or other ruling in the federal court that would preclude us from providing CARG with such relief. Accordingly, this action is not moot.

III

The Estate next contends that the doctrine of judicial estoppel should prevent us from considering CARG's appeal. The Estate reasons that because CARG misrepresented to the federal court the purpose for its appeal in Washington, it gained an advantage in the federal court litigation: specifically, that the Estate's motion to stay proceedings in the federal court was denied.

Even assuming the veracity of the Estate's claim, its remedy, if any, lies in federal court.

"Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position." Cunningham v. Reliable Concrete Pumping, Inc., 126 Wn. App. 222, 224-25, 108 P.3d 147 (2005). Application of judicial estoppel centers around three factors:

> "(1) whether a party's later position is clearly inconsistent with its earlier position; (2) whether judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

Miller v. Campbell, 164 Wn.2d 529, 539, 192 P.3d 352 (2008) (internal quotation marks omitted) (quoting Arkison v. Ethan Allen, Inc., 160 Wn.2d 535, 538-39, 160 P.3d 13 (2007)).

Here, it is for the federal court to determine whether CARG should be judicially estopped from litigating in that court. The Estate contends that the misrepresentation was made to the federal court and that the advantage gained was in that litigation. However, the federal court's order denying the Estate's motion to stay proceedings did not explain why the motion was denied. The Estate now asks us to infer a causal relationship between CARG's argument opposing the motion to stay and the court's ruling. Not only would this be speculative, it would be inappropriate because the Estate's remedy is in federal

court. Accordingly, judicial estoppel does not prevent us from considering CARG's appeal.

IV

CARG asserts that its payment to the Bank in exchange for an assignment of the Bank's rights against the Estate did not discharge the Estate's obligation as principal obligor. This is so, CARG contends, because whether the debt evidenced by the Note was discharged must be determined by the parties' intent. We agree that the parties' intent is the proper standard. Moreover, because CARG and the Estate dispute CARG's and the Bank's intent in assigning the debt—a question of fact—dismissal was inappropriate.

"When the trial court considers matters outside the pleadings on a motion to dismiss for lack of personal jurisdiction, we review the trial court's ruling under the de novo standard of review for summary judgment." Freestone Capital Partners LP v. MKA Real Estate Opportunity Fund I, LLC, 155 Wn. App. 643, 653, 230 P.3d 625 (2010). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

"Ordinarily, the intention of the parties determines whether a transfer of money by a third person to a creditor constitutes a discharge or purchase of an underlying debt." 60 AM.JUR.2D Payment § 5 (2013). Similarly, we look to the parties' intent when determining whether an obligor's payment was intended to discharge another obligor's payment obligation:

- 8 -

"We are in accord with the trend of modern authority, which tends to modify the strict common law rule by which joint contract obligors were often released from the burden of their contract by an inadvertent or ill advised release of one of their number. In connection with such questions as this, the modern rule that *the intent of the parties, as expressed by their acts, and particularly by their writings, should receive a greater measure of consideration in determining contract rights*, is clearly expressed in standard texts and judicial decisions. This principle tends to accomplish just and equitable results to a greater extent than did the strict rule of the common law."

Seafirst Ctr. Ltd. P'ship v. Erickson, 127 Wn.2d 355, 364, 898 P.2d 299 (1995) (emphasis added) (quoting Johnson v. Stewart, 1 Wn.2d 439, 453, 96 P.2d 473 (1939)). Determining what the parties to a contract intended is generally a question of fact. Paradise Orchards Gen. P'ship v. Fearing, 122 Wn. App. 507, 517, 94 P.3d 372 (2004).

In dismissing CARG's claim based on a lack of personal jurisdiction, the trial court would have had to conclude that the LPA Agreement discharged the Estate's payment obligation and, with it, the jurisdiction and venue provisions in the original Agreement and Note. However, for the trial court to conclude that the underlying debt was discharged, rather than purchased, it would have had to determine that the parties intended for it to be discharged, rather than purchased. This is a disputed question of fact.

CARG points to the language in the LPA Agreement as well as the testimony of the Bank's vice president, both of which indicate that CARG and the Bank intended the LPA Agreement to operate as a purchase of the Bank's rights, not as a discharge of the Estate's payment obligation. On the other hand, the Estate points to different language in the LPA Agreement, as well as statements

made by counsel for Kennedy to courts and opposing counsel, suggesting that CARG and the Bank intended the LPA Agreement to satisfy Kennedy's guaranty, which had the legal effect of discharging the Estate's payment obligation. The absence of fact finding in the trial court's order to dismiss for lack of personal jurisdiction does not mean that there were implicit findings made, as the Estate suggests,[3] and it does not mean that this was purely a legal question, as CARG suggests. Rather, a question of fact was improperly decided as a matter of law. Accordingly, dismissal was inappropriate.

Additionally, the Estate asserts that payment or discharge of a guaranty constitutes performance and that the Bank is only entitled to one performance. It follows from this, the Estate reasons, that the Bank had no rights to assign to CARG once it received its one performance. It is true that a creditor is only entitled to one performance. Revocable Living Trust of Strand v. Wel-Co Grp., Inc., 120 Wn. App. 828, 836, 86 P.3d 818 (2004). However, the Estate's argument assumes that the Agreement constituted a discharge of Kennedy's guaranty, not a purchase of the Bank's rights. As explained above, the parties' intent is the controlling factor in determining whether the Agreement constituted a discharge or a purchase. Because intent is a factual question that was not resolved in the trial court, the Estate's "one performance" argument is contingent upon the fact finder's determination of what the parties intended and should

---

[3] The Estate's argument regarding "implicit fact finding" is untenable. We apply the summary judgment standard to the order herein. Neither implicit nor explicit fact-finding is permitted on summary judgment. Summary judgment is only apposite when there are no genuine issues of material fact. Here, there are genuine issues of material fact, rendering dismissal improper.

therefore be considered by the trial court only after the intent of the parties to the LPA Agreement is determined.

V

The Estate next contends that it was proper for the trial court to pierce CARG's corporate veil and that the summary judgment order can be upheld on this basis. Veil piercing was appropriate, the Estate reasons, because Kennedy disregarded CARG's corporate form and his disregard resulted in injustice. We disagree. To the extent that the trial court based its dismissal of CARG's complaint on piercing CARG's corporate veil, it erred by doing so in the absence of the factual findings requisite to veil piercing. Accordingly, summary dismissal on this basis was not warranted.

For a court to pierce the corporate veil, "two separate, essential factors must be established." Dickens v. Alliance Analytical Labs., LLC, 127 Wn. App. 433, 440, 111 P.3d 889 (2005). "'First, the corporate form must be intentionally used to violate or evade a duty.'" Dickens, 127 Wn. App. at 440-41 (quoting Meisel v. M & N Modern Hydraulic Press Co., 97 Wn.2d 403, 410, 645 P.2d 689 (1982)). "Second, the fact finder must establish that disregarding the corporate veil is necessary and required to prevent an unjustified loss to the injured party." Dickens, 127 Wn. App. at 441. Furthermore, a court may pierce the corporate veil under an "alter ego" theory "when 'the corporate entity has been disregarded by the principals themselves so that there is such a unity of ownership and interest that the separateness of the corporation has ceased to exist.'" Grayson

- 11 -

v. Nordic Constr. Co., 92 Wn.2d 548, 553, 599 P.2d 1271 (1979) (quoting Burns v. Norwesco Marine, Inc., 13 Wn. App. 414, 418, 535 P.2d 860 (1975)).

We need not address whether Kennedy intentionally used CARG to violate or evade a duty; dismissal was not proper here because the trial court could not find, as a matter of law, that disregarding the corporate veil was necessary and required to prevent an unjustified loss to the injured party. At most, a disputed question of fact on the question is presented. The Estate asserts that Kennedy's use of CARG both to satisfy his guaranty and seek to enforce the Note against the Estate would work an injustice. CARG, on the other hand, points out that the Estate seeks an "equitable" right of disregard when, in reality, the Estate defaulted on its loan obligations and is seeking to preserve its subsequent windfall of $1,250,000—a windfall antithetical to equity. Before the trial court may pierce the corporate veil, it must find that piercing is necessary to prevent an unjustified loss to the Estate. CARG's assertion raises a clear factual question as to the existence of any equitable entitlement on the part of the Estate. The trial court could not resolve this disputed factual question utilizing summary procedures and, therefore, dismissal was inappropriate.

VI

CARG correctly argues that, if, on remand, the trial court does pierce CARG's corporate veil, CARG will necessarily possess Kennedy's subrogation rights against the Estate. This is so because Kennedy and CARG will be treated as one, allowing CARG—which is in greater need of equity than the Estate—to pursue this equitable remedy against the Estate.

- 12 -

Equitable subrogation is applied broadly "'to include every instance in which one person, not acting voluntarily, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter.'" Tri-City Constr. Council v. Westfall, 127 Wn. App. 669, 675, 112 P.3d 558 (2005) (internal quotation marks omitted) (quoting In re Liquidation of Farmers & Merchs. State Bank of Nooksack, 175 Wash. 78, 85-86, 26 P.2d 631 (1933)). However, "there is no absolute right of equitable subrogation"; instead, it is "based upon the circumstances of each case and the demands of justice for an equitable result." Westfall, 127 Wn. App. at 674. Thus, the party seeking equitable subrogation must be in greater need of equity than its adversary. Livingston v. Shelton, 85 Wn.2d 615, 619, 537 P.2d 774 (1975). Once a party is subrogated, it "step[s] into the lender's shoes to the extent of the current obligation." Columbia Cmty. Bank v. Newman Park, LLC, 177 Wn.2d 566, 574, 304 P.3d 472 (2013).

Here, Kennedy had an obligation, as the guarantor, to pay the debt upon which the Estate was primarily liable. Moreover, Kennedy asserts the greater need for equity because—as the result of his payment—the Estate has retained a windfall exceeding one million dollars. Nevertheless, the Estate contends that subrogation is inappropriate both because Kennedy is not a party to the case and because subrogation is repugnant to the equity-based alter ego doctrine. The Estate's contentions lack merit.

It is true that Kennedy is not a party to this case. However, if, on remand, the trial court determines to pierce CARG's corporate veil under an alter ego

theory, Kennedy and CARG must be treated as one in having answered for the Estate's debt. Accordingly, CARG and Kennedy, as alter egos, would share an identical subrogation right against the Estate. Thus, even though Kennedy is not a named party to this action, as an incident of the alter ego finding, he and CARG, which is a named party in this action, would jointly possess the right to subrogation. Therefore, CARG, as the alter ego of Kennedy, may seek to recover from the Estate under a subrogation theory.

The Estate is correct that piercing the corporate veil is an equitable remedy imposed to rectify an abuse of the corporate privilege. From this, however, the Estate wrongly reasons that subrogation against it is not available because—as an equitable doctrine—subrogation may only be used to prevent injustice, not perpetuate it. In making this argument, however, the Estate disregards the fact that it has been unjustly enriched by over one million dollars as the result of CARG's payment. Focusing narrowly on Kennedy's alleged disregard of CARG's corporate form misses the larger injustice resulting from the Estate's seven-figure windfall. Thus, in the event that the trial court does pierce the corporate veil, it must determine whether the balance of equities is in CARG's and Kennedy's favor. Accordingly, should the trial court pierce CARG's corporate veil, CARG will still share the right to subrogation with its alter ego, Kennedy. Accordingly, CARG would step into the shoes of the lender, the Bank, allowing it to invoke the jurisdiction and venue provisions of the Note and the Agreement.

VII

CARG contends that because "performance of the obligations under the Note and Agreement were due in Seattle WA. There was therefore, specific jurisdiction for enforcement of the obligations in [King County] even in the absence of the contractual venue and jurisdiction provisions." Appellant's Opening Br. at 3-4. We need not consider this argument because CARG provides no authority to support its contention. See e.g., State v. Logan, 102 Wn. App. 907, 911, 10 P.3d 504 (2000). However, CARG is not barred from presenting evidence and citing pertinent authority to support this contention on remand.

Reversed and remanded.

We concur: