FILED
COURT OF APPEALS
DIVISION II

2014 OCT 28 AM 10: 07

STATE OF WASHINGTON

BY_____
                DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| GOLDBERG FAMILY INVESTMENT CORPORATION, a Washington corporation, | No. 44915-3-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| WILLIAM D. QUIGG and CAROL QUIGG, and the marital community comprised thereof; and PATRICK D. QUIGG and KATHLEEN A. QUIGG, and the marital community comprised thereof, | |
| Respondents. | |

BJORGEN, A.C.J. — This appeal arises out of a lawsuit by Goldberg Family Investment Corporation (Goldberg) to compel William and Patrick Quigg (the Quiggs) to arbitrate claims related to the failure of a limited liability company in which Goldberg and entities in which the Quiggs were officers had ownership interests. The Quiggs opposed Goldberg's claims, arguing that Goldberg (1) lacked standing, (2) was not the real party in interest, and (3) could not compel them to arbitrate because they were not parties in their individual capacities to the agreements containing the arbitration clauses.

Before us, Goldberg appeals two trial court orders. The first order granted the Quiggs' motion to strike portions of Goldberg's pleadings as unauthenticated hearsay. Goldberg claims that the trial court erred in granting this motion because it did not offer the statements in the pleadings for their truth, but only to show that its claims were subject to arbitration. The second order granted summary judgment to the Quiggs on the arbitrability of Goldberg's claims, denied Goldberg's motion to compel arbitration, denied Goldberg's motion to strike the Quiggs' affirmative defenses and counterclaim, and dismissed Goldberg's claims with prejudice. Goldberg contends that the trial court erred in granting this order because the arbitration clauses at issue required the Quiggs to arbitrate in their individual capacities and because it had standing to pursue the claims at issue.

Holding that the trial court properly granted the Quiggs' motion to strike, properly determined that the arbitration clauses did not bind the Quiggs in their individual capacities, and properly determined that Goldberg lacked standing and was not the real party in interest for the type of claims it brought, we affirm.

## FACTS

In 1993 a group of investors formed a limited partnership, Grays Harbor Paper L.P. (the Partnership), to operate the Hoquiam Paper Mill and related assets. Among the entities involved in forming the Partnership were its general partner, Grays Harbor Industrial Inc. (GHI), and a number of limited partner entities, including Goldberg, WDQ Investments Inc., and Quigg Investments Inc. William Quigg signed the limited partnership agreement as the president of both GHI and WDQ. Patrick Quigg signed the limited partnership agreement as the president of Quigg Investments Inc.

2

The limited partnership agreement contained an arbitration clause. The clause provided, in relevant part, that

> [a]ny dispute, controversy or claim arising out of or in connection with, or relating to [the Partnership Agreement] or any breach or alleged breach hereof, upon the request of any party involved, shall be submitted to, and settled by, arbitration in Grays Harbor County, Washington, or any other venue agreed upon by the parties, pursuant to American Arbitration Association, or under any other form of arbitration mutually acceptable to the parties so involved.

Clerk's Papers (CP) at 56-57.

In 2010 the partners created Grays Harbor Paper LLC (the LLC) and merged the Partnership into it. The merger resulted in the partners receiving "generally equivalent shares of ownership" in the LLC as those they had possessed in the Partnership. Through this merger the LLC obtained "all properties and assets, and all the rights, privileges, powers, immunities and franchises of [the Partnership]." CP at 164.

Like the limited partnership agreement, the LLC operating agreement contained an arbitration clause. The clause provided that

> [a]ny controversy, claim or dispute of whatever nature arising between any of the parties under this Agreement, the other Transaction Documents or in connection with the transactions contemplated hereunder, including those arising out of or relating to the breach, termination, enforceability, scope or validity hereof, whether such claim existed prior to or arises on or after the date hereof (a "Dispute"), shall be resolved by mediation or, failing mediation, by binding arbitration. The agreement to mediate and arbitrate contained in this Section 16.1 shall continue in full force and effect despite the expiration, rescission or termination of this Agreement.

CP at 129. Any party to the agreement wishing to invoke the arbitration clause could do so by serving a written "[d]ispute [n]otice" on the party it wished to arbitrate with "setting forth the nature of the [d]ispute." CP at 129. Once successfully invoked, the LLC operating agreement's

3

arbitration clause provided that the Federal Arbitration Act would govern and specified the arbitration's procedures and substantive governing law.

The LLC became insolvent in 2011 and eventually assigned its assets to a court appointed receiver. Goldberg filed a notice of appearance in the receivership matter as an interested party, but filed no claims related to this suit.

After the opening of the receivership estate, Goldberg served a dispute notice on the Quiggs under the arbitration clause, making various allegations of misconduct related to the LLC's failure. The notice alleged that William Quigg, through his alter ego GHI, the Partnership's general partner, had misappropriated partnership funds in breach of fiduciary duties he owed to Goldberg. The notice asserted that these financial improprieties continued when the Partnership became an LLC by virtue of William Quigg's role as a de facto manager of the LLC. The notice further alleged that Patrick Quigg took part in his brother's "diversions of funds" and then failed to seek disgorgement of the ill-gotten gains in violation of fiduciary duties that he owed Goldberg. CP at 15.

Despite receiving the notice of dispute, the Quiggs declined to arbitrate Goldberg's claims. Consequently, Goldberg filed a complaint to compel arbitration.

Before the Quiggs responded to Goldberg's complaint, the receiver appeared in the matter by filing a notice of automatic stay. The notice advised the parties that "[w]hile [the LLC] is not a party to this litigation, the claims made herein are assets of the Receivership estate and the commencement of this action constitutes a violation of the automatic stay" triggered by the creation of the receivership estate. CP at 157. Goldberg filed no answer and ultimately, the

receiver assigned all of the LLC's assets to its senior secured creditor; the supervising trial court approved the assignment and closed the receivership.

The Quiggs answered Goldberg's complaint on three grounds. First, the Quiggs denied the substance of Goldberg's allegations. Second, the Quiggs contended that they had not agreed to arbitrate any dispute with Goldberg. In support of this argument, the Quiggs noted that they were not parties to the Partnership or LLC operating agreements in their individual capacities. Finally, the Quiggs maintained that Goldberg was not the real party in interest and lacked standing to make its claims. The Quiggs argued that had the Partnership and the LLC suffered any injuries as Goldberg alleged the right to any remedy belonged to the LLC. The Quiggs contended that this right had passed into the receivership estate and the receiver had assigned it to the LLC's senior secured creditor. The Quiggs' answer also contained a counterclaim requesting declaratory relief and dismissal with prejudice of Goldberg's claims based on their real party in interest and standing arguments.

Goldberg then moved to compel arbitration, arguing that the trial court could compel the Quiggs to arbitrate whether or not they had signed the Partnership and LLC operating agreements in their individual capacities. In support, Goldberg noted that the federal courts had compelled nonsignatories to arbitrate under numerous theories and that the courts of this state had seemingly adopted those theories. Of these theories, Goldberg contended that two required the Quiggs to arbitrate. First, Goldberg claimed that principles of agency law required the Quiggs to arbitrate with it because they were corporate officers in entities that had signed the Partnership and LLC operating agreements. Second, Goldberg argued that, because various entities that had signed the Partnership and LLC operating agreements were alter egos for the

5

Quiggs, the trial court could compel them to arbitrate in the place of those entities by disregarding the entities' corporate form.

Goldberg also moved to strike the Quiggs' standing and real party in interest defenses and dismiss the associated counterclaim with prejudice.[1] Goldberg first contended that the standing and real party in interest issues concerned the merits of its right to recover, and therefore the arbitrator, rather than the trial court, needed to resolve them. Goldberg then argued that, under the Uniform Limited Partnership Act, chapter 25.05 RCW, and the Washington Limited Liability Company Act, chapter 25.15 RCW, general partners and LLC managers owe fiduciary duties to limited partners and LLC members as well as to the business entity itself. Goldberg maintained that it alleged a breach of a fiduciary duty owed to it, not to the Partnership or the LLC, and that it was the proper party to seek a remedy for this breach.

The Quiggs responded with three motions of their own, the first of which was a motion to strike certain factual allegations from Goldberg's motions to compel arbitration and to strike the Quiggs' affirmative defenses and counterclaim. These factual allegations concerned the existence of financial improprieties at the Partnership and LLC, the Quiggs' managerial control over the LLC, the Quiggs' ownership of entities that were members of the Partnership and the LLC, and the Quiggs' breach of fiduciary duties. The Quiggs' motion to strike contended that Goldberg based these allegations on the dispute notice and its attached documents and that these

---

[1] Plaintiffs may use a motion to strike made under CR 12(f) to dismiss defenses with prejudice in the same way that defendants may use a motion made under CR 12(b)(6) to dismiss a plaintiff's claims with prejudice. 3A LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE at 286 cmts. (6th ed. 2013).

documents were not based on personal knowledge as required by ER 602, but instead were hearsay under ER 801 and ER 802 and were not authenticated as required by ER 901.

The Quiggs also moved (1) for summary judgment on Goldberg's motion to compel them to arbitrate and (2) for summary judgment dismissing Goldberg's claims with prejudice based on the counterclaim filed in their original answer. Each of these motions for summary judgment incorporated the Quiggs' motion to strike and argued that Goldberg could not create a material issue of fact with the dispute notice or its attached documents because these documents consisted of unauthenticated hearsay.

Goldberg's consolidated reply brief addressed, among other matters, the Quiggs' motion to strike. Goldberg argued that the motion was meritless because it had not offered the factual matters asserted in its motion to compel arbitration or its motion to strike the Quiggs' defenses and counterclaim for their truth, but only to alert the trial court of the substance of the dispute with the Quiggs.

The trial court resolved these various motions with two orders. The first order granted the Quiggs' motion to strike and stated that the court would not consider the factual allegations the Quiggs objected to for purposes of resolving the parties' other motions. The second order (1) denied Goldberg's motions to compel arbitration and to dismiss the Quiggs' affirmative defenses and counterclaim because Goldberg lacked standing and was not the real party in interest and (2) granted the Quiggs summary judgment because the arbitration clauses did not apply to them in their individual capacities and Goldberg was not the real party in interest and lacked standing. Based on the grant of the Quiggs' motion for summary judgment, the trial court dismissed Goldberg's claims with prejudice.

Goldberg now appeals these two trial court orders.

ANALYSIS

We review de novo Goldberg's appeal of the trial court's denial of its motion to compel arbitration, the grant of the Quiggs' motion for summary judgment, and the grant of the Quiggs' motion to strike. *Gandee v. LDL Freedom Enter., Inc.*, 176 Wn.2d 598, 602, 293 P.3d 1197 (2013) (motion to compel); *Afoa v. Port of Seattle*, 176 Wn.2d 460, 466, 296 P.3d 800 (2013) (summary judgment); *Southwick v. Seattle Police Officer John Doe Nos. 1-5*, 145 Wn. App. 292, 297, 186 P.3d 1089 (2008) (motion to strike in conjunction with a motion for summary judgment). Summary judgment is appropriate where the nonmoving party fails to rebut the moving party's initial showing that no material issue of fact exists, and the moving party is entitled to judgment as a matter of law. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). A defendant moving for summary judgment may demonstrate the absence of a material issue of fact by showing the lack of competent evidence to support a plaintiff's claims. *Young*, 112 Wn.2d at 225 n.1.

I. ARBITRABILITY

Goldberg contends that the trial court erred in denying its motion to compel arbitration and in granting the Quiggs' related motion for summary judgment, in which the Quiggs argued (1) that the arbitration agreements did not bind the Quiggs in their individual capacities and (2) that Goldberg lacked standing and was not the real party in interest. Goldberg argues that the arbitrator, not the trial court, must decide whether it was the proper party to raise its claims and whether the arbitration clauses bound the Quiggs in their individual capacities, since these issues went to the merits, not the arbitrability, of its claims. The Quiggs respond that the trial court

needed to resolve the standing and real party in interest issues and the applicability of the arbitration clauses to them personally before compelling arbitration.

We hold that the trial court properly determined the arbitration clauses did not apply to the Quiggs in their individual capacities and, therefore, affirm the order denying Goldberg's motion to compel arbitration and granting the Quiggs' motion for summary judgment.[2] We also affirm the trial court's order granting the Quiggs' motion to strike.

A.    Quiggs' Motion to Strike

Before turning to the motion to compel, we address Goldberg's appeal of the trial court's order granting the Quiggs' motion to strike, since our resolution of this issue sets the record we review on appeal. Goldberg contends the trial court should not have stricken the factual assertions at issue because it did not offer them to prove the truth of the matters asserted, but instead to show that its claims fell within the scope of the arbitration clauses. The Quiggs contend that, to the extent that Goldberg offered the stricken material as evidence to support its theories for compelling them, as nonsignatories, to arbitrate, the trial court properly declined to consider the assertions. We agree with the Quiggs on this issue.

---

[2] The trial court based its denial of Goldberg's motion to compel arbitration on its determination that Goldberg lacked standing and was not the real party in interest. Because the trial court properly determined the Quiggs were not parties to the arbitration clauses, its denial of the motion to compel arbitration was proper; and, as noted, we affirm the trial court's denial of Goldberg's motion to compel arbitration on that basis. *Gross v. City of Lynnwood*, 90 Wn.2d 395, 401, 583 P.2d 1197 (1978) ("we will sustain the trial court's judgment upon any theory established by the pleadings and supported by the proof."). We therefore need not address the parties' arguments about standing and the real party in interest defense in this context. We do, however, discuss the parties' standing and real party in interest arguments below when addressing the Quiggs' counterclaim and the dismissal of Goldberg's claims.

CR 12(f) allows a party to move to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Goldberg argues that it did not offer the statements at issue for their truth and that they are therefore not hearsay under ER 801(c). However, to the extent that Goldberg did not offer the factual allegations at issue for their truth, they do not make it more or less likely that the Quiggs owed or breached fiduciary duties, improperly benefitted from their positions, or owned the entities signing the operating agreements. In that event, the allegations would be irrelevant under ER 401 and immaterial under CR 12(f). On the other hand, if Goldberg offered the factual allegations in the dispute notice and its attached documents for their truth, they were inadmissible hearsay. ER 801(a), (c); ER 802. Goldberg has not argued that any exception to the bar against hearsay testimony applies and the record before us is insufficient to establish any. Inadmissible evidence is irrelevant to summary judgment proceedings. *Lynn v. Labor Ready, Inc.*, 136 Wn. App. 295, 306, 151 P.3d 201 (2006). Thus, the trial court did not err in striking the factual allegations in Goldberg's motion to compel arbitration or its motion to strike the Quiggs' affirmative defenses as irrelevant.

B.     Quiggs' Motion for Summary Judgment and Goldberg's Motion to Compel Arbitration

An agreement to arbitrate a dispute "[is] valid, irrevocable, and enforceable," subject to certain exceptions not relevant to this appeal. 9 U.S.C. § 2; *accord* RCW 7.04A.060(1). Arbitration is, however, a creation of contract, and no party to an arbitration agreement may compel another party to arbitrate a matter that it did not agree to submit to an arbitrator. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002) (quoting *Steelworkers v. Warrior & Gulf Navigational Co.*, 363 U.S. 574, 582, 80 S. Ct.

10

1347, 4 L. Ed. 2d 1409 (1960)); *accord Saleemi v. Doctor's Assocs., Inc.*, 176 Wn.2d 368, 376-78, 292 P.3d 108 (2013).

Accordingly, before compelling arbitration, the trial court must decide the "'question of arbitrability,'" meaning whether or not "the parties have submitted a particular dispute to arbitration." *Howsam*, 537 U.S. at 83-84 (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)); *accord Saleemi*, 176 Wn.2d at 376. The trial court determines whether the parties have agreed to arbitrate a dispute by looking to whether a valid agreement to arbitrate exists between the parties and whether the subject matter of the dispute arguably falls within the class of disputes subject to arbitration. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985); *see In re Marriage of Pascale*, 173 Wn. App. 836, 842, 295 P.3d 805 (2013). If the trial court determines that an arbitration agreement creates a duty to arbitrate, it must order the parties to do so, and the arbitrator, not the trial court, must resolve the merits of the parties' claims. 9 U.S.C. § 4; RCW 7.04A.070; *AT&T Techs.*, 475 U.S. at 649-50; *Pascale*, 173 Wn. App. at 842-43 (quoting *Hanford Guards Union of Am., Local 21 of Int'l Guards Union of Am. v. Gen. Elec. Co.*, 57 Wn.2d 491, 498, 358 P.3d 307 (1961)).

A party may consent to arbitration without signing an arbitration clause, just as a party may consent to the formation of a contract without signing a written document. *Fisser v. Int'l Bank*, 282 F.2d 231, 233 (2d Cir. 1960), *overruled on other grounds by Kirno Hill Corp. v. Holt*, 618 F.2d 982 (2d Cir. 1980). Therefore, whether an arbitration agreement binds a nonsignatory is a question of whether the party has agreed to arbitrate a matter. As with any determination about the validity and applicability of an arbitration clause, the trial court, not the arbitrator, must

decide whether an agreement binds a nonsignatory. *Howsam*, 537 U.S. at 83-84 (citing *First Options of Chicago v. Kaplan*, 514 U.S. 938, 943-46, 115 S. Ct. 1920, 131 L. Ed. 2d 985 (1995)); *World Rentals & Sales, LLC v. Volvo Constr. Equip. Rents, Inc.*, 517 F.3d 1240, 1244 (11th Cir. 2008); *Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l*, 198 F.3d 88, 95 (2d Cir. 1999); *accord Saleemi*, 176 Wn.2d at 376. The question of arbitrability, therefore, was properly before the trial court to decide.

Turning to the merits of the issue, the Quiggs signed the Partnership agreement in their capacities as presidents of partner corporations and the LLC operating agreement in their capacities as presidents of member corporations. As such, the parties bound to arbitrate by the Quiggs' signatures on these agreements are the Quiggs' corporate principals, not the Quiggs individually. *Union Mach. & Supply Co. v. Taylor-Morrison Logging Co.*, 143 Wash. 154, 157-62, 254 P.2d 1094 (1927) (collecting cases).

However, the federal courts have held that, under "'common law principles of contract and agency law,'" a nonsignatory may consent to arbitrate a dispute "under . . . five distinct theories." *World Rentals*, 517 F.3d at 1244 (quoting *Employers Ins. Of Wausau v. Bright Metal Specialties*, 251 F.3d 1316, 1322 (11th Cir. 2001)). These theories include incorporation by reference, assumption, agency, corporate disregard, and estoppel. *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776-80 (2d Cir. 1995). The Washington Supreme Court and another division of our court have approved these theories for binding nonsignatories to an arbitration clause. *E.g.*, *Satomi Owners Ass'n v. Satomi, LLC*, 167 Wn.2d 781, 810-11 & n.22, 225 P.3d 213 (2009); *Woodall v. Avalon Care Ctr.*, 155 Wn. App. 919, 923-24, 231 P.3d 1252

(2010). Goldberg argues that three of these theories apply here: estoppel, corporate disregard, and agency. We consider each in turn.

Goldberg first contends that the Quiggs must arbitrate due to principles of estoppel. Where nonsignatories have derived benefits from an agreement, a trial court may find that they are bound by arbitration clauses in the agreement through estoppel. *Smith/Enron*, 198 F.3d at 97-98. The trial court properly struck the evidence that Goldberg relied on to show the Quiggs benefitted from the operating agreements. Therefore, no material issue of fact existed, and the trial court properly found that the Quiggs were not required to arbitrate in their individual capacities based on estoppel. *Young*, 112 Wn.2d at 225 n.1.

Goldberg next alleges that the arbitration clauses bind the Quiggs because they signed the limited Partnership and LLC operating agreements through their alter ego corporations. A trial court may disregard the business entity and find that an arbitration clause binds nonsignatory owners. *Thomson-CSF*, 64 F.3d at 777-78. A successful alter ego claim allows such disregard. *Columbia Asset Recovery Grp. v. Kelly*, 177 Wn. App. 475, 486, 312 P.3d 687 (2013) (quoting *Grayson v. Nordic Constr. Co.*, 92 Wn.2d 548, 553, 599 P.2d 1271 (1979)). However, to establish that any entity was an alter ego for the Quiggs, Goldberg needed to show that William or Patrick "'so dominate[d] and control[led]'" the entity that the court should treat the entity's signature as either William's or Patrick's signature. *Standard Fire Ins. Co. v. Blakeslee*, 54 Wn. App. 1, 5, 771 P.2d 1172 (1989) (quoting *Pohlman Inv. Co. v. Virginia City Gold Mining Co.*, 184 Wash. 273, 283, 51 P.2d 363 (1935)). The trial court struck the evidence Goldberg relied on to make this showing. Therefore, no material issue of fact existed, and summary judgment for

13

the Quiggs was appropriate on the alter ego theory of compelling arbitration. *Young*, 112 Wn.2d at 225 n.1.

Finally, Goldberg argues that agency principles bind the Quiggs to the arbitration clauses. A trial court may find that arbitration clauses bind nonsignatories based on traditional agency principles. *Thomson-CSF*, 64 F.3d at 777. Evidence remaining in the record established that the Quiggs acted as the officers of various entities when they signed the limited Partnership and LLC operating agreements. The Quiggs, therefore, acted as agents for those entities. *See Youngs v. Peacehealth*, 179 Wn.2d 645, 670, 316 P.3d 1035 (2014). No evidence, though, established the converse: that the entities acted as agents for the Quiggs who acted as principals. Agency law does not allow a party to compel an agent to arbitrate in the place of his or her principal. *Flink v. Carlson*, 856 F.2d 44, 46 (8th Cir. 1988) ("[s]igning an arbitration agreement as agent for a disclosed principal is not sufficient to bind the agent to arbitrate claims against him personally."); *In re Matter of Arbitration Between Keystone Shipping Co. & Texport Oil Co.*, 782 F. Supp. 28, 32 (S.D.N.Y. 1992) ("[s]igning an arbitration agreement as an agent for a disclosed principal is not sufficient to render an agent a party to the arbitration clause."). No material issue of fact existed and the trial court properly granted the Quiggs summary judgment on this theory of compelling arbitration.

As noted, before compelling arbitration, the trial court must determine that a dispute subject to arbitration exists. *Dean Witter Reynolds*, 470 U.S. at 218; *see Saleemi*, 176 Wn.2d at 376. As part of this inquiry, the trial court must determine whether a nonsignatory to an arbitration clause has agreed to arbitrate a dispute with a signatory. *See Howsam*, 537 U.S. at 83-84. As shown, the Quiggs did not agree to arbitrate any dispute with Goldberg in their

14

individual capacities, and none of the asserted common law doctrines impose that duty on the Quiggs. Therefore, the trial court did not err by granting the Quiggs' motion for summary judgment or by denying Goldberg's motion to compel arbitration. *See Howsam*, 537 U.S. at 83-84; *Saleemi*, 176 Wn.2d at 376.

## II. STANDING/REAL PARTY IN INTEREST

Goldberg next contends that the trial court erred in denying Goldberg's motion to strike the Quiggs' defenses and counterclaim and in dismissing its claims based on the Quiggs' standing and real party in interest arguments. While agreeing that any claims the LLC had against the Quiggs were assigned to the receiver and now belong to the LLC's senior creditor, Goldberg contends that its claims did not belong to the LLC. Instead, Goldberg maintains that it is seeking redress for the loss of its investment in the Partnership and LLC caused by the Quiggs' breach of fiduciary duties owed to it and, therefore, it is the proper party to raise its own claims. The Quiggs maintain that Goldberg seeks to recast injuries to the Partnership and the LLC as injuries to itself, meaning that Goldberg is not the proper party to seek redress. Thus, we address whether Goldberg had any claims that it could pursue directly, rather than derivatively, for the LLC. We hold that it did not. Because Goldberg pursued these claims directly rather than derivatively, it lacked standing and was not the real party in interest. For that reason, we affirm the grant of summary judgment to the Quiggs dismissing Goldberg's claims.

The doctrine of standing prevents "a plaintiff from asserting another's legal rights." *Trinity Universal Ins. Co. of Kan. v. Ohio Cas. Ins. Co.*, 176 Wn. App. 185, 199, 312 P.3d 976 (2013), *review denied*, 179 Wn.2d 1010 (2014). The doctrine performs this task by requiring a plaintiff to show, among other things, "a personal injury fairly traceable to the challenged

15

conduct and likely to be redressed by the requested relief." *High Tide Seafoods v. State*, 106 Wn.2d 695, 702, 725 P.2d 411 (1986).

The real party in interest doctrine "protect[s] the defendant against a subsequent action by the party actually entitled to recover, and . . . insure[s] generally that the judgment will have its proper effect as res judicata." *Rinke v. Johns-Manville Corp.*, 47 Wn. App. 222, 227, 734 P.2d 533 (1987) (citing FED. R. CIV. P. 17(a), Advisory Committee Note, reprinted in 39 F.R.D. 84, 85 (1966)). Washington's court rules codify the doctrine in CR 17(a), which requires that "[e]very action shall be prosecuted in the name of the real party in interest." Subject to certain exceptions, "the real party in interest is 'the person who, if successful, will be entitled to the fruits of the action.'"[3] *Nw. Indep. Forest Mfrs. v. Dep't of Labor & Indus.*, 78 Wn. App. 707, 716, 899 P.2d 6 (1995) (quoting 3A LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE, at 420 (4th ed. 1992)).

In a limited partnership, the general partner owes fiduciary duties to both the partnership entity itself and its limited partners. RCW 25.10.441(1). Similarly, LLC managers owe the LLC entity itself and its members fiduciary duties analogous to those owed in a partnership. *Bishop of Victoria Corp. Sole v. Corporate Bus. Park, LLC*, 138 Wn. App. 443, 456, 158 P.3d 1183 (2007) (citing John Morey Maurice, *Operational Overview of the Washington Limited Liability Company Act*, 30 GONZ. L. REV. 183, 200 (1994/95)). One of these duties is the duty of loyalty, which requires the fiduciary to avoid "secret profits, self-dealing, and conflicts of interest."

---

[3] A derivative suit is such an exception because the equity holder sues on behalf of the business entity in order to redress wrongs done to it; the recovery from such a suit goes to the entity, not the equity holder. *LaHue v. Keystone Inv. Co.*, 6 Wn. App. 765, 777, 496 P.2d 343 (1972).

*Horne v. Aune*, 130 Wn. App. 183, 200, 121 P.3d 1227 (2005); RCW 25.10.441(2); *see* RCW 25.15.040(1).

However, the fact that the Quiggs may have owed fiduciary duties to Goldberg as an LLC member, as well as to the Partnership and the LLC, does not mean that Goldberg is the proper party to raise the claims it seeks to arbitrate. The plain terms of the Uniform Limited Partnership Act define when a partner may sue another partner directly for a breach of duty owed to the partner. RCW 25.10.701(2) allows such suits only where the partner alleges an injury "that is not solely the result of an injury suffered or threatened to be suffered by the limited partnership." Where the partner does not allege such an injury, the right to the suit belongs to the limited partnership itself, and the partner must sue derivatively in its name. RCW 25.10.701; *see* RCW 25.10.706-.721.

The Washington Limited Liability Company Act also distinguishes between direct and derivative suits, although it does not specify how to distinguish the two. *See* RCW 25.15.370-.385. The act has numerous such omissions, and the courts of this state have filled the gaps in the act while the legislature and the Washington State Bar Association consider how to redraft it. *Sherron Assocs. Loan Fund V (Mars Hotel) LLC v. Saucier*, 157 Wn. App. 357, 361-62, 237 P.3d 338 (2010). We hold the same test used for distinguishing direct and derivative actions in the limited partnership context also applies to suits by LLC members for two reasons.

First, in this state the test for limited partnerships is the one generally used, outside of the partnership context, to distinguish between direct and derivative actions. As noted, the legislature specifically prescribed the test for limited partnerships. RCW 25.10.701(2). The courts of this state apply the same test when distinguishing between direct and derivative actions

17

by corporate shareholders. *Sabey v. Howard Johnson & Co.*, 101 Wn. App. 575, 584-85, 5 P.3d 730 (2000) (discussing when corporate shareholders may make direct, rather than derivative, claims). Further, the Delaware courts use this same test to determine whether a stockholder's claim is derivative or direct. *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031 (2004). Because the Delaware courts have significant experience with the law of business entities, the courts of this state often look to Delaware decisions as persuasive authority. *Eg., In re F5Networks, Inc., Derivative Litig.*, 166 Wn.2d 229, 239-40, 207 P.3d 433 (2009).

Second, compelling reasons justify applying the general rule just noted to identify when an LLC member may bring a direct rather than a derivative suit. A derivative suit ensures that the business entity suffering the injury is made whole and that all its equity holders share in this. *See Moore v. Los Lugos Gold Mines*, 172 Wash. 570, 598, 21 P.2d 253 (1933) (citing 14 C. J., § 1457 at 937). Particularly apposite here, a derivative suit also prevents equity holders from recovering in a manner upsetting the creditor priority scheme when the business entity has become insolvent. *See LaHue v. Keystone Inv. Co.*, 6 Wn. App. 765, 780-81, 496 P.2d 343 (1972); *In re Sunrise Secs. Litig.*, 916 F.2d 874, 886-87 (3d Cir. 1990).

A fair reading of Goldberg's complaint indicates that it seeks redress for an injury arising solely from injuries inflicted on the Partnership and the LLC. Goldberg alleges that the Quiggs essentially looted the Partnership and the LLC of value and that this eventually rendered the LLC insolvent, not that the Quiggs stole directly from Goldberg. The injury that Goldberg complains of, misappropriation of partnership and LLC funds, is an injury to the Partnership and the LLC, not to Goldberg; Goldberg's injury was derivative of the injury to the Partnership and the LLC. Thus, Goldberg lacks the type of personal injury sufficient to confer standing for a direct suit and

18

is not the party entitled to the "'fruits of the action'"; the LLC is. *Nw. Indep. Forest Mfrs.*, 78 Wn. App. at 716 (quoting 3A LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE, at 420 (4th ed. 1992)). Because Goldberg sought direct, rather than derivative, recovery, the trial court did not err in granting the Quiggs summary judgment and dismissing Goldberg's claims.

Goldberg argues that the legislature authorized a direct action whenever a limited partner brings suit against another partner for fiduciary breaches or when an LLC member sues an LLC manager for such a breach. In support, Goldberg notes that the legislature defined the standard of conduct partners owe each other in a limited partnership or that managers owe members of an LLC separately from creating derivative rights of action. *See* RCW 25.10.441 (standard of conduct by a partner in a limited partnership); RCW 25.15.155 (standard of conduct for an LLC manager); RCW 25.10.706 (derivative right of action in a limited partnership); RCW 25.15.370 (derivative right of action in an LLC). RCW 25.10.441 does prescribe the duties the partners in a limited partnership owe each other. But RCW 25.10.701 and RCW 25.10.706 define whether a partner may pursue a claim for a breach of the duties owed in RCW 25.10.441 directly or derivatively. The legislature explicitly made the type of claims Goldberg asserts here derivative in the partnership context and, as we discussed above, we hold the same rule applies in the LLC context.

Goldberg also cites our opinion in *Bishop of Victoria*, 138 Wn. App. at 443, and the Western District of Washington's opinion in *Finlay v. Takisaki*, No. C05-1118JLR, 2006 WL 1169794 (W.D. Wash. April 28, 2006), claiming that they also support its reading that suits by

partners or LLC members against other partners or LLC managers are always direct. We disagree.

*Bishop of Victoria* involved a suit by one member of an LLC against another member. Our opinion in *Bishop of Victoria* concerned the existence of fiduciary duties in a member managed LLC. *Bishop of Victoria*, 138 Wn. App. at 455-60. Because we found no breach of any duty, we never analyzed whether the plaintiff needed to press a direct or derivative action to remedy the breach. *Bishop of Victoria*, 138 Wn. App. at 454-60. *Bishop of Victoria*, therefore, offers no precedential authority for Goldberg's proposition that the relationship between the plaintiff and the defendant defines the type of suit the plaintiff must pursue to recover for breaches of fiduciary duties. *Cazzanigi v. Gen. Elec. Credit Corp.*, 132 Wn.2d 433, 443, 938 P.2d 819 (1997).

*Finlay* involved a suit by a member of an LLC against a third party arising from damages to the LLC. The *Finlay* court dismissed the suit based on standing grounds consistent with the principles we discussed above. The trial court reasoned that Finlay suffered no injury aside from the one he suffered derivatively from injury to the LLC. *Finlay*, 2006 WL 1169794 at *3. Given this lack of a direct personal injury, the trial court reasoned that Finlay lacked standing to pursue direct claims against the third party. *Finlay*, 2006 WL 1169794 at *3. Based on this reasoning, the *Finlay* court noted that the LLC itself was the proper party to raise the claims Finlay pleaded and dismissed his complaint. *Finlay*, 2006 WL 1169794 at *3. Thus, *Finlay* stands for the proposition that the nature of the injury, direct or derivative, determines whether a plaintiff must pursue a direct or derivative remedy, just as we have held above. The identity of the party inflicting the injury is irrelevant to this inquiry.

## CONCLUSION

We hold that the trial court did not err in granting the Quiggs' motion to strike. We hold also that the court correctly determined that the arbitration clauses did not require the Quiggs to arbitrate this dispute in their individual capacities. Accordingly, we affirm its grant of summary judgment to the Quiggs on this issue and its denial of Goldberg's motion to compel arbitration. Finally, we hold that Goldberg could not pursue direct claims against the Quiggs for injuries it suffered derivatively from injuries to the Partnership and LLC and, therefore, we affirm the trial court's determination that Goldberg lacked standing and was not the real party in interest. Consequently, we affirm the trial court's grant of summary judgment to the Quiggs on their counterclaim, its denial of Goldberg's motion to strike the Quiggs' defenses and counterclaims, and its dismissal of Goldberg's claims.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Bjorgen, A.C.J.

BJORGEN, A.C.J.

We concur:

Hunt, J.P.T.

HUNT, J.P.T.

Lee, J.

LEE, J.

21